**STANFORTH, Appellant, v. SMITH, Trustee, et al., Appellees**
(Two Cases.)

Ohio Appeals, First District, Hamilton County

(Nos. 6693 and 6696—Decided October 26, 1946.

Edward M. Ballard, Cincinnati, for Appellants.
John M. McCaslin, Cincinnati, for Appellees.

## OPINION

By ROSS, J.

In the first of these actions, the plaintiff sues as

the husband of Dorothy Stanforth for loss of services, consortium, and expense due to injuries received by her when she fell down a stairway in the house which she and her husband rented from the defendants.

In the second case the wife, Dorothy Stanforth sues for damages for such injuries.

Demurrers to the second amended petitions filed in each case were sustained by the trial court and the plaintiffs not desiring to plead further, judgment was rendered in each case for the defendants. The demurrers were sustained on the ground that the second amended petitions did not state causes of action.

Appeals on questions of law were taken from such judgments to this court.

A demurrer only raises those matters of law which are developed upon the face of the pleading. **Sec. 11309, GC,** provides in part:

"The defendant may demur to the petition only when it appears on its face either: * * *

"10. That the petition does not state facts which show a cause of action."

See also, §11311, GC.

The first paragraph of the syllabus in **Guardian Life Ins. Co. v. Veser, 128 Oh St, 200,** is as follows:

"For the purpose of testing the legal sufficiency of a pleading, a demurrer admits not only the proper and well-pleaded factual allegations thereof, but also the fair, reasonable and favorable intendments and inferences arising therefrom."

The allegations of the pleadings attacked by the demurrer in each case contained statements that the plaintiffs in each case were tenants of the defendants.

In the husband's case it is stated: "The defendants obtained title to the above residence on the above date under the terms of the will of Edna Witham Smith, who was the owner of the said residence at the time **Plaintiff and her family rented and entered into possession of the said house.**" (Emphasis added) The use of the word "her" is evidently a mistake and should be "his."

In the wife's second amended petition, it is alleged: * * * "at the time the Plaintiff and her family rented and entered

into possession of said house."· And, again: "Plaintiff lived as a tenant in said dwelling house and her family was sole occupant thereof and in sole possession and control."

It is evident from such allegations therefore that the plaintiff in each case was a tenant of the defendants and that each had participated in the renting of such premises from the defendants.

The second amended petitions contain substantially the same allegations as to the physical characteristics of the premises, the city ordinances involved, and the manner in which Dorothy Stanforth was injured:—

"The said house is one story in front fronting on the street and two stories in the back fronting on a yard with an outside passageway leading up to the street.

"There is a stairway of fourteen steps in said house leading from a platform between two bedrooms on the street level down to a platform between two rooms on the yard level. From this platform doors lead to the two adjoining rooms and there is a door from one of these rooms leading out to the yard and the outdoor passageway leading around the house to the street level.

"There was no handrail installed on said stairway.

"In maintaining the property in this condition the defendants and their predecessor in title, Edna Witham Smith, violated certain sections of Chapter Seven of the Building Code of the City of Cincinnati which were in full force and effect at the time the Stanforth family rented the house and have been in full force and effect ever since. Said provisions are as follows:

"CHAPTER 7
MEANS OF EGRESS

"Section 1700. General

"(a) **Means of Egress** Defined. The term "Means of Egress" shall include **required** exit doors, stairways, fire-escapes, passageways and ramps or other passages provided for a safe and continuous means of exit from a **building** to a public thoroughfare.

"(b) **Scope of this Chapter.** The requirements of this Chapter shall apply to **buildings** of all **occupancies,** except that specific **requirements** of the egress sections of Chapter 5, shall take precedence for the occupancies to which they apply.

"(c) **Existing Buildings. Existing buildings** shall, as far as practicable, be made to conform to the minimum egress **requirements** of this Code. The Commissioner-of-**Buildings** may at any time serve a written notice upon the owner, lessee or

manager of such **buildings**, directing any additions, **alterations**, removals or any other provision which may be necessary to make such **buildings** conform to these **requirements**, and/or to provide for the safety of the occupants and the public. Additional fire escapes may be **required** where necessary to provide two safe means of egress from **existing buildings**.

"(d) **Change of Occupancy.** Where a change of **occupancy** occurs, the building shall be made to comply with all egress requirements for the new occupancy.

Sec. 1704. e. Railings.

"(e) **Buildings.** All stairways shall have walls or substantial balustrades or effective guards on each side and hand rails shall be placed on at least one side of every stairway. Stairways exceeding 44 inches in width shall have handrails placed on each side. Stairways more than 88 inches wide shall also be provided with one 'or more continuous intermediate handrails substantially supported and the number and position of intermediate handrails shall be such that there are not more than 88 inches between adjacent handrails.

"Handrails and railings shall be placed not less than 30 inches above the nosing of treads and ends of handrails shall, where practicable, be returned to the wall.

"On the said 8th day of April the said Dorothy Stanforth undertook to descend the said stairway and as a result of the lack of a handrail as aforesaid, fell down the said steps." (Emphasis added.)

It is the contention of the defendants that the ordinances quoted do not require handrails or a stairway such as is described in the pleading.

If the ordinance requires such handrail on the type of stairway involved there is a mandatory duty upon the owner and **tenant** to comply with the ordinance and failure so to do causing injury, is negligence per se. **Doster v. Murr, 57 Oh Ap 157; Bevan v. Realty Co., 64 Oh Ap 58; Marqua v. Martin, 109 Oh St 56.**

It is, however, apparent that the stairway described in the second amended petition was not one covered by the quoted city ordinances. It is to be noted that it is alleged that the stairway connected a "platform" on the street level in the house with a platform on the rear yard level in the house, and a door opened from such platform to a room having a door to the rear yard.

It was no more a "means of egress" as described in the ordinance than any other portion of the house might be considered so.

A stairway connecting an attic room with a room on the second floor might also be considered a means of egress from such attic room down through the house, through other rooms to the street. The "stairway" in question did not provide for a safe and continuous means of exit from a **building** to a public thoroughfare.

The trial court committed no error in sustaining the demurrers to the second amended petitions, for the reasons above.

However, there is an additional reason for sustaining the conclusion of the trial court.

The plaintiff in each case was a tenant of the defendant. As pointed out, the allegations in the pleadings so state. The ordinance in question put an equal duty upon the owner and lessee. (See paragraph (c) supra.)

In any event, the plaintiffs rented the entire building and with their children were the sole occupants thereof and had sole control thereof. The absence of the railing must have been perfectly apparent to these tenants when they rented the building. They are presumed to know the law and if the railing was required by law, they accepted the building knowing that such requirement was not fulfilled.

If the owner was guilty of negligence per se in not complying with the law, these tenants are equally guilty of contributory negligence in accepting sole control over premises they are presumed to know violated the city ordinances in question.

None of the cases cited by appellant cover the situation here presented. This is not a case of a multiple family dwelling, nor is the plaintiff a stranger to the relationship of landlord and tenant. It is not a case of a concealed defect. The instant case resembles most strongly the circumstances existing in the case of **French v. Huston, 7 Abs 55**, where the Sixth District Court of Appeals held in the syllabus:

"Tenant who, in violation of ordinance requiring gas stove to be equipped with flue, operated landlord's stove, knowing that such stove was not equipped, cannot recover from landlord for damages caused by such lack of equipment."

For these reasons, the judgments of the trial court dismissing the quoted "petitions" are affirmed.

HILDEBRANT, PJ, MATTHEWS & ROSS, JJ., concur in syllabus, opinion and judgment.